**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**LAKISHIA HILL** **PLAINTIFF**

**V.** **CASE NO. 5:09cv00281 JMM**

**ROBERT TUCKER, CARL REDUS, AND**
**CITY OF PINE BLUFF, ET AL.** **DEFENDANTS**

ORDER

Pending before the Court is Defendants' Motion for Summary Judgment on Plaintiff's claims of violations of 42 U.S.C. § 1983, Arkansas Code Annotated § 11-4-601 ( "Arkansas' Equal Pay Act") and the Arkansas Civil Rights Act of 1993 ("ACRA"). For the reasons stated below, the motion is granted (#22).

Plaintiff contends that Defendant Mayor Carl Redus in his individual and official capacities violated Arkansas' Equal Pay Act, ACRA, and § 1983 when he denied her equal pay or promotions based upon her gender and race, and that Defendant Robert Tucker in his individual and official capacities retaliated against her for filing this lawsuit in violation of ACRA and federal law.

Defendants contend that (1) Plaintiff has failed to establish *prima facie* cases for her salary discrimination, race discrimination, or retaliation claims; (2) Defendant Tucker has come forward with a legitimate nondiscriminatory reason for his actions; (3) Defendants Tucker and Redus are entitled to qualified immunity in their individual capacities on all claims; (4) Plaintiff has failed to establish that the City of Pine Bluff has a policy, practice or custom of unequal payment for women

or for retaliating against individuals for filing lawsuits; (5) because Plaintiff's federal claim fails, the Court should decline to accept jurisdiction over Plaintiff's state claims; and (6) that the Defendants are entitled to Qualified Immunity.

I. *Facts*

Defendant Redus has been the Mayor of the City of Pine Bluff since January of 2005 following his election in November of 2004. Plaintiff, an African American female, began working with the City of Pine Bluff on January 20, 2005, as a secretary in the Inspection and Zoning Department ("the department") with a starting salary of $20,530.00. Prior to working as secretary in the department, the Plaintiff obtained a bachelor's degree in business administration, worked with Brown Law Firm as a legal secretary and worked for the City of Dermott as a permit clerk.

In addition to her secretarial duties, Plaintiff trained with other zoning inspectors, and completed an International Code Council for Zoning course. Plaintiff was responsible for entering permits, assisting zoning inspectors, filing inspections when completed, typing and printing notices for zoning inspectors, and preparing files and bid sheets for bid openings. Plaintiff received her zoning inspector certification on July 8, 2006.

Bill Glover was the zoning administrator for the department which included two zoning official positions held by Danny Birdsong, a white male,[1] and Greg Garner. Birdsong and Garner had worked for the department since 1979 as zoning inspectors. Birdsong and Garner had vocational education and degrees in mechanical drafting and architectural drafting. Birdsong

[1]*See* Pl. Brief in Opposition (#32), Ex. A. Plaintiff testified that she was discriminated against because she was a black female she was not paid the same amount as the white male she replaced.

retired in July of 2006.

On November 15, 2006, Glover requested approval to hire Plaintiff for the open zoning official position at a salary of $28,205.30 which was consistent with Section 203.0 D of the 1996 City's Personnel Manual.  Defendant Redus approved the Plaintiff for the position at that salary on November 20, 2006.   At the time Plaintiff was hired, Garner was paid $35,422 and Birdsong had been paid $41,000.00.   Birdsong trained Plaintiff in anticipation of her being hired as a zoning inspector and Glover was responsible for training Plaintiff after she was hired in that position.  After Birdsong retired, Garner managed the zoning side of the department.

On February 12, 2009, Tucker gave Plaintiff a verbal warning in which he stated that he spoke with Plaintiff about the time spent away from her desk, her resentment that Tucker had asked to review her planning commission minutes, her resentment that Tucker had instructed her to submit her written permits for review, and her refusal to carry her departmental cell phone with her when she left the office.

On March 6, 2009, the Plaintiff requested "correct compensation" from the City by writing a letter to the Administration Committee stating that "the City had a policy of paying the incoming employee the rate of pay that the position was currently budgeted."   The basis for Plaintiff's belief that such a policy existed is a memo written to Ken Ferguson, former Human Resources Director, from Joe Childers, Assistant City Director, in December of  2004.   That memo followed the December council meeting in which the council voted to "terminate the use of the 1996 salary survey."

In that December 2004 meeting, Alderman Jack Foster "made a motion to discontinue use of the 1996 Salary Survey and those salaries of all new hires would be reviewed

by the Human Resource Department and the Administration Committee." Following the council's decision to discontinue use of the '96 salary survey, the council passed Ordinance No. 6163 "Directing the Mayor to Undertake, Complete and Submit to the City Council a Comprehensive Salary Survey for All City Positions." Def. Ex. L.

In that ordinance, the council stated that "a scheme should be developed for the classification of city positions by a grade system and the implementation of a 'step' process to reward experience and tenure in employment." *Id.* The council further ordained that " Based upon the information developed from the said salary survey, the responsibilities and other qualifications requirement for the positions, and other relevant factors, the Mayor shall develop a grade grouping system for all city positions and establish the appropriate salary range for each position in the grade." *Id*.

Defendant Redus contracted with the Johanson Group Management Consulting Services to conduct a comprehensive compensation market analysis ("salary survey"). In October of 2006, the Johanson Group completed and delivered the new salary survey to the City. Within the salary survey, the Johanson Group compared the salaries for positions in Little Rock, North Little Rock, Jefferson County, Texarkana, etc., to the current salaries in Pine Bluff. Based on their findings, the Johanson Group created a "Policy Pay Range" for each position within the City and established a minimum, mid, and maximum point within that "Policy Pay Range." Def. Ex. I.

On April 20, 2009, Plaintiff wrote to the Administration Committee requesting that she be paid what Birdsong was making at the time of his retirement, $41,000, retroactive to her start date in November of 2006. At the May 5, 2006 Administration Committee meeting, the

members of that committee formally discussed the Plaintiff's request. The Administration Committee voted to recommend to the City Council an increase in the Plaintiff's pay from $28,205.30 to $35,145, the midpoint of the salary survey. The council approved that request on May 19, 2009. This pay raise resulted in Plaintiff's rate of pay being equal to Garner's 2006 rate of pay.

On September 3, 2009, Plaintiff filed this lawsuit. On January 27, 2010, Tucker issued Plaintiff a written warning concerning her comments to the Planning Commission on January 26, 2010, and asked her to refrain from making comments regarding development proposals in Pine Bluff. He stated in the written warning that Plaintiff became defensive, antagonistic, loud, and agitated in a manner that was not appropriate for the workplace. In that same conversation, Tucker told Plaintiff he felt her lawsuit against the City was personally offensive, asked her if she was playing a race, age, or gender card, and said he did not know how to deal with a girl like her. The Plaintiff filed a written rebuttal to the HR Director the day following her written warning from Tucker.

In March of 2009, an Emergency Management Position opened with the City. A panel, created by Fire Chief Don Horton, recommended Plaintiff for the position. However, Defendant Redus rejected the recommendation and hired Lieutenant Earnest Jones, a black male,[2] to fill the Emergency Management position. Lieutenant Jones was firefighter with the City and had recently graduated from Arkansas Tech University with a degree in Emergency Management.

---

[2]*See* Second Amended and Supplemental Complaint filed on July 7, 2010, which states that a black male was appointed to the position.

Plaintiff amended her complaint to include additional claims on March 3 and July 7, 2010.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where a motion for summary judgment is properly made and supported an opposing party must set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e)(2).

A. *42 U.S.C. § 1983 Claim - Unequal Pay and Race Discrimination*

> To establish a *prima facie* case of gender discrimination based on disparate pay, [the Plaintiff] must establish she occupied an employment position similar to that of higher-paid males. Once a *prima facie* case is established, the defendant must articulate a legitimate, nondiscriminatory reason for the pay disparity. "This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them.". . . "Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her." . . . "[T]he plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.' "

*Ottman v. City of Independence, Mo.*, 341 F.3d 751 (8th Cir. 2003) (citations omitted) (§ 1983 case).

Plaintiff has failed to establish a *prima facie* case under § 1983 because she has failed to establish that she occupied an employment position similar to that of Birdsong or Garner. Plaintiff admits that Birdsong trained her in anticipation of her becoming a zoning inspector and

that Garner was made responsible for her training both before and after her assuming the position of zoning inspector.  There is no evidence that Plaintiff was ever given a supervisory position when she became a zoning inspector.  In addition, Glover testified that Garner took over the zoning side of the department because of his experience and knowledge.  There is no evidence that Plaintiff's position encompassed that same responsibility.

Even if Plaintiff had established a *prima facie* case, Defendants have come forward with sufficient evidence to prove that the decision to pay Plaintiff less that Birdsong and Garner was based upon a seniority system.  It is undisputed that Birdsong and Garner, each, had approximately 25 years of experience as zoning inspectors and that Plaintiff had worked for the department as a secretary for approximately two years before being hired as a zoning inspector.

For these same reasons, Plaintiff's § 1983 race discrimination claim fails.  *See Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (inquiry into Title VII, § 1983, and § 1981 disparate treatment cases the same).  To establish a *prima facie* case of racial discrimination, Plaintiff "must show the following: (1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (Title VII case claiming unequal pay based on race).  Here, for the reasons stated above, Plaintiff has failed to establish that Birdsong and Garner were similarly situated employees.

Likewise, Plaintiff's failure to hire claim is without merit.  Assuming without deciding that Plaintiff established a *prima facie* case that she was discriminated against based upon her gender when she was denied the Emergency Management position, Defendants have come

forward with a legitimate nondiscriminatory reason for hiring Earnest Jones, e.g., he had more experience and was better qualified.

Moreover, the proposition that Redus's discriminates against women in his hiring practices has recently been rejected. *See Johnson v. City of Pine Bluff, et al.*, Case NO. 5:10CV00037 (E.D. Ark. July 25, 2011) (Court rejects attempt to show pretext by asserting other women have been discriminated against by Mayor Redus).

Based upon the above the § 1983 claims against Defendant Redus in his individual capacity are dismissed.

To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because the Court has found that Plaintiff has failed to establish a constitutional violation, the claims against the City of Pine Bluff are also dismissed. Even if Plaintiff had established a constitutional violation, the evidence presented by Plaintiff does not establish that the City of Pine Bluff has an official custom, policy, or practice of paying, promoting, or failing to hire employees in a discriminatory manner based upon gender or race. To the extent that the City Counsel and Defendant Redus were inconsistent in application of salary policies, there is insufficient evidence to establish that these inconsistencies were based upon gender or race.

B. *Retaliation*

Plaintiff contends that Tucker gave her verbal and written warnings that she was rude and antagonistic toward him because she filed this lawsuit.

Plaintiff's claim based upon the verbal warning fails as it occurred before Plaintiff filed her lawsuit.

To successfully establish a First Amendment retaliation claim, Plaintiff must plausibly plead and present evidence that she "engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action" against her "that would chill a person of ordinary firmness from engaging in that activity." *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002).

Assuming that Plaintiff's action of filing this lawsuit is protected activity, *see Borough of Duryea, Pa. v. Guarnieri*, 131 S.Ct. 2488, 2493, 2500-2501 (2011) (elements of protected activity for public employee), her claim is still without merit as she has failed to establish with any evidence that the alleged retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights.

Initially it should be noted that Plaintiff did not suffer any adverse employment actions which would have a chilling effect. There is no evidence that Plaintiff suffered a loss of pay, reduced hours, or responsibilities. To the extent that Plaintiff alleged and presented evidence that she was embarrassed, humiliated or emotionally distressed by the written warning, the Court finds that such embarrassment, humiliation, or emotional distress was not sufficient to deter a person of ordinary firmness from continuing to speak out. *See Naucke v. City of Park Hills*, 284 F.3d at 928.

While the test is an objective one, not subjective, how Plaintiff reacted to the written warning might be evidence of what a reasonable person would have done. *See Garcia v. City of Trenton,* 348 F.3d 726, 729 (8th Cir. 2003). Here, there is undisputed evidence that Plaintiff filed a formal grievance the day following the written warning. Moreover, Plaintiff amended her complaint to include additional claims on March 3 and July 7, 2010, after Tucker had issued the written warning.

Finally, there is no evidence that the City of Pine Bluff had a custom, policy, or practice of retaliating against its employees for filing lawsuits against it. Plaintiff testified that no one, other than Tucker, had retaliated against her.

The claims against Tucker in his individual and official capacities are dismissed.

II. *Plaintiff's State Law Claims*

ACRA provides a cause of action for damages for "the deprivation of any rights ... secured by the Arkansas Constitution" by any person acting under color of state law. Ark.Code Ann. § 16–123–105(a). The statute provides that, in construing ACRA, "a court may look for guidance to state and federal decisions interpreting ... 42 U.S.C. § 1983." Ark.Code Ann. § 16–123–105(c).

Because the Court has found that Plaintiff's § 1983 claims against these Defendants in their individual and official capacities are without merit, it will make the same findings on Plaintiff's ACRA claims.

Plaintiff's remaining claim is her Arkansas Equal Pay claim against Defendant Redus in his official and individual capacities. Arkansas Equal Pay Act states that employees shall be paid equal compensation for equal services. *See* Ark. Code Ann. § 11-4-601. Here as stated

above, Defendants have presented sufficient undisputed evidence that Plaintiff, and Birdsong and Garner's duties were not equal and that the pay scale for Plaintiff, Birdsong, and Garner was based upon seniority. *Compare* 29 U.S.C. § 206(d)((1) (Under Equal Pay Act employer cannot discriminate between employees on the basis of sex "except where such payment is made pursuant to (i) a seniority...").

For these reasons and those stated above, Plaintiff's Arkansas Equal Pay Act claims are dismissed.

IV. *Conclusion*

Because the Court has found that Plaintiff's constitutional rights have not been violated, there is no need to address the qualified immunity issues. Plaintiff's complaint is dismissed with prejudice and judgment will be entered accordingly.

IT IS SO ORDERED THIS __4__ day of __August_, 2011.

James M. Moody
United States District Judge